UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEN M., o/b/o BERRY M., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. C18-5146-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications[1] for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for an award of benefits.

---

[1] The applicant for disability benefits is deceased and his brother proceeds as his representative. The Court herein refers generally to "plaintiff" or "claimant" with further clarification where necessary.

ORDER
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1969.[2] He completed high school, attending special education classes and requiring an additional year to graduate. (AR 38-39, 42-24.) Plaintiff was last gainfully employed, in December 1997, as a baker helper. (AR 39-40, 228, 1430.)

Plaintiff protectively filed a DIB application on May 18, 2009 and an SSI application on June 5, 2009, alleging disability beginning June 1, 1997. (*See* AR 204, 1418.)[3] He remained insured for DIB through December 31, 2002 and was therefore required to establish disability on or prior to that "date last insured" (DLI) in order to receive DIB. *See* 20 C.F.R. §§ 404.131, 404.321. Plaintiff's applications were denied at the initial level and on reconsideration.

On January 21, 2011, ALJ Gordon Griggs held a hearing, taking testimony from plaintiff, his brother, and a vocational expert (VE). (AR 31-79.) Plaintiff passed away on April 3, 2011 (AR 183) and his brother was deemed an appropriate substituted party (*see* AR 1418). In a June 14, 2011 decision, the ALJ found plaintiff not disabled prior to June 5, 2009, but disabled as of that date and through his death. (AR 15-24.) He found plaintiff not under a disability or entitled to DIB at any time through the DLI. While plaintiff established his entitlement to SSI, there was no one eligible to receive those benefits.

The Appeals Council denied plaintiff's request for review on March 8, 2012 (AR 1-5) and plaintiff filed a civil action in this Court. On November 14, 2012, the parties stipulated to a remand for further proceedings. (AR 1216-17.) The Appeals Council vacated the decision and remanded, directing the ALJ to re-evaluate the medical and lay opinions regarding onset of disability and to obtain the assistance of a medical expert in determining that date. (AR 1228-29.)

---

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

[3] Plaintiff did not appeal a May 2008 decision denying an earlier SSI application. (AR 91-100.)

On November 8, 2013, ALJ Gary Elliott held a hearing, taking testimony from claimant's brother, a VE, and psychological expert Dr. Arthur Lewy. (AR 1143-81.) In a decision dated December 3, 2013, the ALJ again found plaintiff not disabled prior to June 5, 2009, but disabled as of that date, and not disabled at any time through the DLI. (AR 1113-27.)

The Appeals Council denied plaintiff's request for review (AR 1104-07) and plaintiff again filed a civil action. By Order dated October 26, 2015, the Court remanded for further proceedings to address whether plaintiff met the requirements of listing 12.05C in the Listing of Impairments in Appendix 1 to Subpart P of the regulations. (AR 1570-77.) On February 8, 2016, the Appeals Council vacated the decision and remanded for further proceedings consistent with the Court's Order. (AR 1581.) It affirmed the ALJ's finding of disability beginning June 5, 2009 and directed the ALJ to issue a new decision on the issue of disability prior to that date.

ALJ Gene Duncan held a hearing on October 24, 2016, taking testimony from claimant's brother, a VE, and medical expert Dr. James Todd. (AR 1457-1535.) On February 15, 2017, the ALJ issued a decision finding plaintiff was not under a disability, and therefore not entitled to DIB, from the June 1, 1997 application date through June 5, 2009. (AR 1418-32.)

Plaintiff submitted exceptions to the ALJ's decision and, on December 29, 2017, the Appeals Council found no reason to assume jurisdiction. (AR 1408-13.) Plaintiff appealed the final ALJ decision to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

ORDER
PAGE - 3

be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity after the June 1, 1997 alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's obesity and learning disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, with simple, repetitive tasks, basic vocabulary instructions, and hands-on training for work setting changes. With that assessment, the ALJ found plaintiff able to perform his past work as a baker helper prior to June 5, 2009.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as an agricultural sorter.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff asserts step three error in the failure to address whether he met listing 12.05C and that the evaluation of the evidence demonstrates a lack of understanding of the nature of that listing. He also avers error at steps two, four, and five, in the assessment of lay witness evidence, and in the hypotheticals offered to the VE. He requests remand for a finding of disability as of June 1, 1997 and an award of benefits. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Step Three

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment must have the findings shown in the listing, *id*., and must meet all of the specified medical criteria, *Sullivan*, 493 U.S. at 530.

In 2015, this Court found error in the ALJ's consideration of listing 12.05C, which

ORDER
PAGE - 5

addresses intellectual disorders.[4] To meet or equal that listing, a claimant must satisfy three requirements: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (i.e., before age 22); (2) a valid verbal, performance, or full scale IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2011); *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013). The parties agreed the ALJ erred in overlooking plaintiff's verbal IQ score of 65. (AR 1576.) The Commissioner argued the error was harmless because plaintiff's verbal learning disorder could not be considered a physical or other mental impairment imposing an additional limitation. The Court rejected this argument, noting a learning disorder is not necessarily coextensive with a listing-qualifying IQ score. However, the ALJ had not made findings as to whether the verbal learning disorder imposed any additional limitations or whether plaintiff satisfied the first prong of the listing. (AR 1576-77.) The Court directed the ALJ to address listing 12.05C and to explicitly discuss plaintiff's testimony on remand. (AR 1577.)[5]

Effective January 17, 2017, the Social Security Administration (SSA) removed paragraph C from listing 12.05. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). The portion of the revised listing now pertinent to the Court's inquiry, 12.05B, requires satisfaction of three requirements: (1) significantly subaverage general

---

[4] The current version of listing 12.05 addresses "intellectual disorder," while prior versions of the listing utilized the terminology "intellectual disability" or "mental retardation." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 n.1 (9th Cir. 2013); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00B(4)(b). The Court, whenever possible, utilizes the most recent terminology.

[5] The Commissioner had argued "in all likelihood, Moore should have met the Listing as of June 2009, which, according to the ALJ's findings, was when Moore had several severe mental and physical impairments[.]" (Dkt. 23 at 9 (citing AR 1117).) The Commissioner, however, maintained any error was harmless in that it was subsequently cured by the ALJ's conclusion plaintiff was disabled at step five as of June 2009.

ORDER
PAGE - 6

intellectual functioning evidenced by either a full scale IQ score of 70 or below or a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, areas of mental functioning (including (a) understand, remember, and apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself); and (3) evidence about current intellectual and adaptive functioning and the history of the disorder demonstrates or supports the conclusion it began prior to age 22. 20 C.F.R. pt. 404, Subpt. P, app. 1 § 12.05B (2017). *See also* § 12.00H(1) (2017).

At the time of the October 2016 hearing, the revised listing was not in effect. Although appearing to acknowledge the revision to come (AR 1463 ("The problem with 12.05 is it seems to be obsolete.")), the ALJ proceeded to take testimony regarding listing 12.05C (AR 1465). Medical expert Dr. Todd agreed with the 2011 assessment of consultative psychological examiner Dr. Loren McCollom that plaintiff's mental status was severe and plaintiff had a learning disability his entire life. (AR 1430; AR 1462-73.) However, the ALJ ultimately found Dr. Todd, a cardiologist, not qualified to testify regarding the listing. (AR 1429-30.)

In his February 2017 decision, a month after the revision took effect, the ALJ addressed plaintiff's claim solely in relation to revised listing 12.05B. The ALJ found plaintiff did not satisfy 12.05B because he did not have significant deficits in adaptive functioning, manifested by extreme limitation of one, or marked limitation of two, areas of mental functioning. (AR 1424.) He found only mild limitation in interacting with others and moderate limitation in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (AR 1423.)

The ALJ also found plaintiff failed to satisfy the remaining requirements of 12.05B. The

ORDER
PAGE - 7

record showed, in March 2011, a full scale IQ score of 71 and a verbal IQ score of 65. (AR 1424 (citing AR 1085).) However, in August 2009, when plaintiff was forty years old, consultative psychiatric examiner Dr. Aaron Hunt found, objectively, plaintiff "did not appear to be suffering from or have any ongoing intellectual dysfunction, suggestive of borderline intellectual functioning or mental retardation." (*Id*. (citing AR 851).) The record did not show a diagnosis of an intellectual disorder prior to March 2011 and there was no medical evidence showing plaintiff had that disorder prior to age 22. No State agency psychological consultant concluded plaintiff equaled a mental listing.

The ALJ gave great weight to the opinion of Dr. Hunt, who found plaintiff able to perform simple/repetitive and detailed/complex tasks, no objective evidence to support an inability to receive instructions from supervisors, interact with coworkers and the public, and no evidence he could not maintain regular attendance, participate in a normal workday, or deal with regular stressors in the workplace. (AR 1429 (citing AR 847-52).) The ALJ gave some weight to the opinion of prior testifying expert Dr. Lewy that plaintiff was only mildly limited in functioning, but found the record to support moderate limitations in understanding, remembering, and applying information, and in concentration, persistence, and pace. He gave little weight to the opinion of Dr. Todd because it fell outside the cardiologist's area of expertise and was inconsistent with the opinions of Drs. Hunt and Lewy. (AR 1429-30, 1473.)

Plaintiff avers error in the ALJ's failure to address whether he met listing 12.05C, as ordered to do by this Court. He asserts a number of related errors, including the failure to address the diagnoses and limitations opined by Dr. McCollom, or to properly address evidence supporting the conclusion his intellectual disorder dated back to his childhood, including the report from Dr. McCollom, hearing and lay witness testimony, and other evidence in the record.

ORDER
PAGE - 8

The Commissioner contends the ALJ had no choice but to apply the revised listing. In giving notice of the revised mental disorder listings, the SSA indicated: "When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." 81 Fed. Reg. 66138. The agency expected federal courts reviewing final agency decisions would use the rules in effect at the time of those decisions. *Id.* at n.1. If a court remanded a case for further proceedings after the effective date, the agency would apply the revised rules to the entire period at issue. *Id.* The Commissioner denies any other error, contending the ALJ's findings show plaintiff's impairments do not meet the previous or current version of listing 12.05. The Commissioner argues Dr. McCollom's opinion, offered two years after the established onset date of disability and nine years after the DLI, was neither significant, nor probative and did not support a finding of disability, and that the ALJ reasonably rejected the testimony of Dr. Todd and favored the evidence from Drs. Hunt and Lewy. She denies any error, or harmless error, in regard to the lay witnesses.

This case is unusual in several respects. Claimant passed away more than seven years ago. He can be found entitled to disability benefits only upon showing he met the necessary criteria almost sixteen years ago. The proper criteria to apply to that determination is in dispute.

There is no dispute the revised listing 12.05 was in effect at the time of the final ALJ decision. Plaintiff posits it would be fundamentally unfair to apply the revision, noting the prior listing applied from the time of application through the 2016 hearing, and that the ALJ's decision issued only twenty-nine days after the revision effective date. The Commissioner maintains the intervening change in the regulations made it impossible for the ALJ to strictly comply with the Court's order and that application of the revised listing was consistent with the order.

Neither party addresses the issue of retroactivity. Courts in this district have, on more than

one occasion, construed Ninth Circuit law as requiring an ALJ to apply the listings in effect at the time of a claimant's application. *See, e.g., Beaty v. Berryhill*, No. C17-6056-RSM-JPD, 2018 U.S. Dist. LEXIS 168256 at *3-5 (W.D. Wash. Sep. 28, 2018); *Caffall v. Berryhill*, No. C17-5051-MAT, 2017 U.S. Dist. LEXIS 182139 at *6, n.2 (W.D. Wash. Nov. 2, 2017). As stated by the Ninth Circuit: "A claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed. 42 U.S.C. § 1382(c)(7). Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [the] application under the listings in effect at the time she filed her application." *Maines v. Colvin*, No. 14-15258, 2016 U.S. App. LEXIS 20316 at *2 (9th Cir. Nov. 16, 2016) (reversing district court decision requiring application, on remand, of a revised listing with an effective date after plaintiff filed for benefits, but before the decisions of the ALJ and Appeals Council, and containing effectiveness language identical to that for revised listing 12.05).

The Court, in this case, finds no need to resolve the issue of the proper listing to apply. For the reasons set forth below, the Court finds multiple harmful errors in the ALJ's decision and an award of benefits warranted.

A.   <u>Harmful Errors</u>

The ALJ erred in failing to sufficiently address the evidence from Dr. McCollom. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The ALJ, at most, considered the IQ scores assessed by this physician. Yet, Dr. McCollom's opinion, like the opinion of Dr. Hunt, remained relevant despite the fact it post-dated the DLI. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). Dr. McCollom rendered his opinion with

consideration of both the earlier report from Dr. Hunt (AR 1080) and the only IQ testing results available for consideration in this case. Dr. McCollom also, as discussed below, assessed plaintiff's functioning. The ALJ could not reject this significant, probative evidence without explanation. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). The omission further calls into question the ALJ's assessment of the other medical opinions of record.

The ALJ also erred in his consideration of listing 12.05B. The failure to properly consider the evidence from Dr. McCollom necessarily implicates the decision at step three, including the determination plaintiff did not have significant deficits in adaptive functioning or evidence his disorder began prior to age 22. The Commissioner's arguments to the contrary in large part constitute improper post hoc rationalizations. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (cited source omitted).

The ALJ erred in relying on the absence of a diagnosis of an intellectual disorder prior to March 2011. The revised listing, like the former, does not require a diagnosis of an intellectual disorder. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00B(4), 12.00H, 12.05; 81 Fed. Reg. 66138, 66150-51 (2016) ("The three elements that define 'intellectual disability' are the three criteria in listing 12.05. We do not use the word 'diagnosis' in the rules related to the listing."); *Pedro v. Astrue*, 849 F. Supp. 2d 10006, 1010 (D. Or. 2011) (listing 12.05C does not require diagnosis of intellectual disability; citing numerous cases finding same).

The ALJ further erred in finding "no medical evidence" showing plaintiff had an intellectual disorder prior to age 22. A showing of attainment prior to age 22 may be established

ORDER
PAGE - 11

by more than medical treatment records. It can be demonstrated or supported by, for example, tests of intelligence or adaptive functioning and "[s]tatements from people who have known you and can tell us about your functioning in the past and currently." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H(4). "Evidence <u>from</u> the developmental period is not required in order to establish that the impairment began before the end of the developmental period; rather, the agency may use its judgment when current evidence allows it to infer when the impairment began." *Hernandez v. Astrue*, No. 08-17511, 2010 U.S. App. LEXIS 10985 at *2-3 (9th Cir. May 28, 2010) (emphasis in original; citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50753 (Aug. 21, 2000) (interpreting listing 12.05)). There must be evidence permitting an interference the impairment existed before age 22 and "is not of recent origin due to a traumatic event or some other changed circumstance." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1051 (C.D. Cal. 2010) (citing *Markle v. Barnhart*, 324 F.3d 182, 188-89 (3d Cir. 2003)).[6]

The ALJ erred in his consideration of the symptom testimony from claimant and the

---

[6] Several circuits have gone farther than the Ninth Circuit in *Hernandez*. Recognizing that IQ remains fairly constant throughout life, those courts found a rebuttable presumption a claimant's developmental IQ was the same as their current IQ when they present a valid IQ score from their post-developmental period. *See e.g., Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (per curiam); *Luckey v. U.S. Dep. of Health & Human Srvs.*, 890 F.2d 666, 668-69 (4th Cir. 1989). *But see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (upholding finding that claimant did not meet or equal listing in part because IQ testing was not contemporaneous with her developmental period); *Markle*, 324 F.3d at 188-89 (declining to create a presumption). The Eleventh Circuit concluded claimants presumptively met 12.05C when they presented a valid IQ score and evidence of an additional impairment. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). These cases recognize that the requirement of an intellectual disability arising before age 22 "seems intended to limit coverage to an innate condition rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (citations omitted). The Western District of Washington has, in some cases, followed this line of reasoning. *See, e.g., Cauffman v. Astrue*, No. C10-281-JCC-JPD, 2010 U.S. Dist. LEXIS 138257 at *23-25 (W.D. Wash. Nov. 12, 2010) (claimant's IQ score of 70 or below creates a rebuttable presumption that subaverage intellectual functioning existed during the developmental period), *adopted by* 2010 U.S. Dist. LEXIS 138240 (Dec. 30, 2010).

testimony of his brother and other lay witnesses. The ALJ found inconsistency with the medical evidence, but, other than IQ scores, did not take the evidence from Dr. McCollom into consideration. (AR 1427-28.) The ALJ found plaintiff's lack of mental health treatment, with no history of psychiatric hospitalization, mental health counseling, or psychotropic medications, suggested the alleged persistence and intensity of related symptoms were not as serious as alleged. (AR 1428.) As argued by plaintiff, this appears to reflect the ALJ's misunderstanding of the nature of plaintiff's impairment and the symptom testimony. While Dr. McCollom did identify various mental health diagnoses (AR 1087), both claimant and his brother attested to symptoms and limitations associated with intellectual functioning, not mental health issues amenable to treatment through psychiatric counseling or medications. (*See* AR 1425-26.)[7] The ALJ further failed to sufficiently address the testimony of claimant's brother at hearing, including clarifications provided in relation to the reminders and assistance claimant required in his daily activities, including hygiene, cleaning, medication, and appointments. (AR 1425-26, 1428.) The ALJ's errors also undermine the partial rejection of lay statements based on inconsistency with the medical evidence and with plaintiff's level of activity. (AR 1430.)

Finally, all of the above-described errors implicate the ALJ's findings at steps four and five. The decision, in sum, lacks the support of substantial evidence.

B.  Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v.*

---

[7] Plaintiff also points to the ALJ's confusing discussion at hearing of the "DSM," or Diagnostic and Statistical Manual of Mental Disorders, in relation to the listing 12.05 requirements. (*See* AR 1471-72.) It is not clear whether the ALJ meant to refer to the DSM or to the regulations.

ORDER
PAGE - 13

*Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). *Accord Leon v. Berryhill*, No. 15-15277, 2017 U.S. App. LEXIS 22330 at *3, 874 F.3d 1130, ___ (9th Cir. Nov. 7, 2017).

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of outstanding issues that must be resolved before a disability determination can be made. *Id*. Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021).[8]

Finally, even with satisfaction of the three requirements, the Court retains flexibility in determining the proper remedy. *Id*. The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id*. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Id.* If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

The ALJ here erred in numerous respects. The Court further finds the record has been fully

---

[8] Although not applicable to the ALJ's February 2017 decision, the SSA revised its regulations regarding the consideration of medical opinions with the intent "to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 at 5858-60 (January 18, 2017) (regulation changes effective March 27, 2017). The SSA further clarified that the "credit-as-true rule" is "inconsistent with the general rule that, when a court finds an error in an administrative agency's decision, the proper course of action in all but rare instances is to remand the case to the agency for further proceedings." *Id*.

ORDER
PAGE - 14

developed, additional proceedings would not be useful, and, whether applying the former or current listing 12.05, there is sufficient evidence to establish disability.

As the Commissioner concedes, plaintiff "met two requirements of the 2016 Listing [12.05C] already in the decision as written: his verbal IQ score of 65 and his severe physical impairment of obesity." (Dkt. 15 at 7.) The IQ scores likewise satisfy the 12.05B(1) requirement of significantly subaverage general intellectual functioning evidenced by a full scale IQ score of 71-75 accompanied by a verbal IQ score of 70 or below. § 12.05B(1)(b).

The record also contains evidence supporting the conclusion plaintiff satisfies 12.05B(2) with significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, areas of mental functioning. In March 2011, Dr. McCollom found plaintiff moderately/markedly limited in social interaction given his anxiety, extremely low verbal intelligence, and difficulty relating to others, and opined plaintiff did not appear appropriate for public employment. (AR 1089.) He found plaintiff's ability to understand, remember, and follow instructions moderately/markedly impaired due to extremely low verbal functioning and working memory.[9] Plaintiff lacked the ability to manage his funds due to his cognitive limitations and illiteracy, with extremely low range scores on tests of arithmetic, working memory, and processing speed. (AR 1091.) Dr. McCollom also, in a separate form dated April 8, 2011, assessed marked and extreme limitations in relation to understanding, remembering, and carrying out instructions, with test results indicating plaintiff functioned "between the mentally retarded & borderline level of intelligence[,]" and verbal abilities falling in the extremely low range for both spoken and

---

[9] Dr. McCollom explained that, in a work setting, plaintiff would likely become overwhelmed, distracted, and anxious by demands or expectations he function efficiently and with efficient speed, would have a slowed/very slowed pace depending on context and abilities required, and that his scores suggested he is very limited in the ability to perform moderate/complex tasks, but may be able to perform simple, routine job tasks. (AR 1089.)

ORDER
PAGE - 15

received language abilities. (AR 1094-95.) He assessed marked limitations in plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, pointing to a lack of social skills, compounded by mood disturbance, especially anxiety bordering on paranoid thought processes, and extremely low verbal abilities. (AR 1096-97.) Dr. Todd, while opining outside his area of expertise, testified plaintiff's mental status was very severe, with difficulty managing his medications, severe cognitive problems, and social withdrawal, found satisfaction of listing 12.05 with the IQ scores and limitations in social functioning and concentration, and described the report from Dr. McCollom as compelling. (AR 1462-75.) Considering the evidence as a whole and the unique circumstances of this case, the Court finds substantial evidence support for plaintiff's satisfaction of 12.05B(2).

Finally, the Court finds substantial evidence support for the conclusion plaintiff's intellectual and adaptive functioning deficits manifested before age 22, as required for satisfaction of both 12.05C and 12.05B(3). Plaintiff's IQ results and medical records provide support. *See* § 12.00H(4)(a), (e). While noting plaintiff overall performed within the borderline range on testing, Dr. McCollom observed "his score barely meets the criteria for the Borderline designation, as a loss of two points would place him within the Mentally Retarded range of intellectual functioning." (AR 1087.) He included mental retardation as a "rule-out" diagnosis due to "confidence intervals[.]" (*Id.*) Dr. McCollom also found plaintiff was not likely to develop substantial gains in cognitive abilities and that his history of academic difficulties suggested continued intellectual and learning limitations. (AR 1089-91.) In addition, Dr. Lewy testified plaintiff's verbal learning disability "most likely dates from childhood" (AR 1153), while Dr. Todd agreed "IQ is a lifetime condition[.]" (AR 1469.)

Plaintiff's history of special education also supports the onset of deficits in functioning

prior to age 22. *See* § 12.00H(4)(d), (h). *See also Potts v. Colvin*, No. 14-15038, 2016 U.S. App. LEXIS 3935 at *3-4 (9th Cir. Mar. 2, 2016) (school records indicating special education "plainly establish [the claimant's] intellectual impairments and deficits in adaptive functioning began before he turned 22"); *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1260 (D. Or. Feb. 29, 2016) ("Evidence that demonstrates deficits in adaptive functioning may be circumstantial. Relevant circumstance evidence includes difficulties with reading and writing, attendance of special education classes, and dropping out of school."); *Pedro*, 849 F. Supp. 2d at 1012 (claimant satisfied first prong of 12.05C upon showing she attended special education classes through her graduation from high school, and still has struggles with reading and writing); *Campbell v. Astrue*, 1:09-cv-00465, 2011 U.S. Dist. LEXIS 13742 at *51 (E.D. Cal. Feb. 8, 2011) ("Examples [of circumstantial evidence allowing for an inference of a deficit in adaptive functioning prior to the age of 22] includes attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.") The record consistently reflects that plaintiff attended special education classes throughout his schooling and that he could not read or write. (*See, e.g.*, AR 38-39, 42-43, 92, 239, 257-62, 288, 496, 749, 824, 848-50, 964, 993, 1081-82, 1150-52, 1483-85.)[10] His brother testified claimant was born with a severe speech impairment and remained illiterate despite being "pushed" through high school in special education classes. (AR 1483-85 (2016 testimony); *accord* AR 59-60 (2011 testimony) and AR 1150-51 (2013 testimony).) His father attested to his attendance in special education classes and severe reading and writing disability. (AR 288.)

---

[10] A letter from Federal Way Public Schools indicates it had no record plaintiff received special education services. (AR 829.) However, it is not clear whether this meant plaintiff did not receive such services or that there were no educational records regarding plaintiff due to the passage of time. (AR 77 (plaintiff's counsel indicated "all of the school stuff, because we have contacted both [Federal Way] and Renton, is no longer available due to the period of time."))

ORDER
PAGE - 17

The testimony and lay evidence also provide support, both historically and more recently, for the conclusion plaintiff's intellectual disorder began prior to age 22. Claimant testified he could not read or use a computer, did not have a bank account, and that his brother paid his bills. (AR 44-45, 49, 52, 56-58.) His brother and sister-in-law indicated claimant had no problem with personal care, but needed reminders for hygiene and paperwork and help with daily activities, including assistance with medications and household chores, that he could count change but not otherwise handle money, could not read or write, and had a hard time following spoken instructions and poor social skills. (AR 255-62.) At hearing, claimant's brother testified he had provided assistance throughout claimant's life by, for example, taking care of medications, paying bills, filling out forms, helping to secure and keep jobs, providing reminders regarding hygiene and reminders and assistance with laundry and other cleaning, and otherwise generally managing claimant's life. (AR 1490-91, 1497-1502.) Claimant never obtained a driver's license and never lived entirely independently. (AR 1492-96, 1500.) While claimant at one point reported losing a job due to drug addiction (AR 241), both he and his brother testified to his difficulties on the job and jobs lost due to his intellectual impairment. (*See, e.g.*, AR 44-46, 60-62, 1149-50.) Part of his work history entailed a sheltered or similar work environment. (AR 1120, 1166-67, 1507-17; *see also* AR 46, 62, 74-75.)

Finally, there is no evidence plaintiff's intellectual disorder was of recent origin as a result of some trauma or a deterioration in functioning over time. *Hernandez*, 2010 U.S. App. LEXIS 10985 at *2-3 (evidence from which ALJ could conclude plaintiff met listing included the absence of evidence the claimant's cognitive functioning had deteriorated over time). *Gomez*, 695 F. Supp. 2d at 1061 ("Nothing in the record suggests that plaintiff's subaverage intellectual functioning was of recent origin.") The evidence as a whole supports an inference the impairment began before

the end of the developmental period. For this reason and for the reasons stated above, the Court finds substantial evidence support for a finding of disability at step three as of the June 1, 1997 alleged onset date and plaintiff's entitlement to DIB.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for an award of benefits.

DATED this <u>31st</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge